**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|   |   |
|---|---|
| SHANTELL SCOTT, as administrator of the Estate of TYRUS SCOTT, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTOR OF IDOC, ROB JEFFREYS, and UNNAMED CORRECTIONAL OFFICERS AT STATEVILLE CORRECTIONAL CENTER, <br><br> Defendants. | No. 21-cv-03334 <br> Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shantell Scott, as the administrator of the Estate of Tyrus Scott (the Estate), has filed suit against Defendants Rob Jeffreys (Jeffreys), in his official capacity as Director of the Illinois Department of Corrections (IDOC), and unnamed correctional officers at Stateville Correctional Center (Stateville) (collectively Defendants), alleging that Defendants, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* and Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 791, *et seq.*, denied Tyrus Scott (Scott), an incarcerated individual with paraplegia, adequately safe access to his bed and adequate means for disposal of his bodily waste. R. 1, Compl.[1] Jeffreys moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). R. 17,

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

Mot. Dismiss. For the following reasons, Jeffreys' Motion to Dismiss is granted solely as to the Estate's request for punitive damages and denied in all other respects.

## Background

Scott was an inmate with paraplegia incarcerated at Stateville, an IDOC facility, confined to a wheelchair. Compl. ¶¶ 5, 9. Scott was placed in a non-ADA-compliant cell, despite the existence of ADA-compliant cells at Stateville. *Id.* ¶¶ 11–12. Scott was assigned the bottom bunk of a bunk bed. *Id.* ¶ 13. He was not provided any means of transferring himself from his wheelchair to his bed, so he had to propel himself from his wheelchair onto his bed. *Id.* ¶ 14. This necessarily exposed Scott to the danger of hitting his head and neck on the top bunk while airborne. *Id.* Scott could not sit up and use his catheter correctly while in the bottom bunk bed, causing him to urinate on himself. *Id.* For the duration of his time at Stateville, Scott was assigned to a cell that did not provide him adequate access to his bed or hygienic means of waste disposal. *Id.* ¶ 17. Scott died and Shantell Scott is the administrator of Scott's estate. *Id.* ¶ 5. The Estate filed suit against Jeffreys in his official capacity as Director of IDOC, asserting violations of the ADA and the Rehabilitation Act. *Id.* ¶¶ 1, 6.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual

allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To that end, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The ADA's definition of public entity "covers instrumentalities of a State, which would include state prisons." *Simmons v. Godinez*, 2017 WL 3568408, *5 (N.D. Ill. Aug. 16, 2017). The Rehabilitation Act specifically prohibits federally funded organizations from discriminating on the basis of disability. *Wis. Cmty. Servs. v. City of Milwaukee,* 465 F.3d 737, 746 (7th Cir. 2006); *see also Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020) (the ADA and Rehabilitation Act both prohibit discrimination against qualified persons with

3

disabilities). In the Seventh Circuit, the ADA and the Rehabilitation Act are "functionally identical." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). To state a claim under the ADA and the Rehabilitation Act, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the "services, programs, or activities of a public entity"; (3) he was denied those benefits or otherwise discriminated against on account of his disability, and for the Rehabilitation Act claim, the additional requirement is that (4) the defendant is an entity which receives federal funds. *Clemons v. Dart*, 168 F. Supp. 3d. 1060, 1065 (N.D. Ill. 2016) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). The "relief available under both the statutes is coextensive, thus as one claim rises or falls, so does the other." *Jaros*, 684 F.3d at 671.

## I. Sufficiency of ADA and Rehabilitation Act Claims

For purposes of his motion to dismiss, Jeffreys does not dispute that the Complaint adequately alleges that Stateville is a covered entity or that Scott was a qualified individual with a disability.[2] R. 43, Reply at 2. The issue is whether the Complaint sufficiently alleges the second and third elements—that Scott was denied reasonable access to "services, programs, or activities" provided by Stateville because of his disability. Mot. Dismiss ¶ 2; R. 18, Memo. Dismiss at 3.

Jeffreys advances two primary arguments in support of dismissal of the Complaint. First, Jeffreys argues the Complaint should be dismissed because it does

---

[2]As Jeffreys does not dispute IDOC receives federal funds, and the ADA and the Rehabilitation Act are otherwise coextensive, this Opinion will refer only to the ADA going forward. Reply at 1–2.

not allege that Scott was denied access to a "service, program, or activity" provided by Stateville, within the meaning of the ADA. Memo. Dismiss at 3. Second, Jeffreys argues the Complaint fails to adequately allege Scott was discriminated against *because* of his disability. *Id.* at 4. The Court addresses each argument in turn.

### A. Denial of "Services, Programs, or Activities"

Jeffreys contends that the Complaint fails to adequately allege that Scott was denied access to any Stateville "services, programs, or activities" provided to non-disabled inmates. Memo. Dismiss at 3. Jeffreys raises three primary arguments in support. First, while the Complaint alleges that Scott required a wheelchair to engage in any level of mobility, the Estate admits in its response that Scott had a functioning wheelchair. Memo. Dismiss at 3 (citing Compl. ¶ 32); Reply at 2 (citing R. 24, Resp. at 8). Therefore, reasons Jeffreys, no ADA violation exists as to that issue. Memo. Dismiss at 3; Reply at 2. Second, while the Complaint alleges that Scott was qualified for services and benefits at the IDOC, including access to food or medical services, nowhere in its Complaint does the Estate allege that Scott was denied food or medical services. Memo. Dismiss at 4; Reply at 2 (citing Compl. ¶ 32). Therefore, reasons Jeffreys, no ADA violation exists as to that issue. Memo. Dismiss at 4; Reply at 2–3. Lastly, Jeffreys argues the Estate did not sufficiently plead Scott was denied access to any other "service, program, or activity" within the meaning of the ADA. Mot. Dismiss ¶ 2; Memo Dismiss at 2–4.

The Court agrees with Jeffreys that the Estate did not plead an ADA violation based on the functionality of his wheelchair. Nor did it plead that Scott was denied

5

access to food or medical services in violation of the ADA. The Court therefore addresses only Jeffreys' arguments as to whether the Estate adequately alleged that that Scott was denied access to any other "service, program, or activity" within the meaning of the ADA

### 1. Access to Hygienic Disposal of Bodily Waste

The Complaint alleges that Scott's placement in a bunk bed prevented him from effectively using his catheter, which caused him to spill urine on himself, and that Stateville refused to assign him to an ADA-compliant cell. Compl. ¶¶ 14, 18.

Jeffreys argues that any issues Scott had managing his catheter were medical and did not constitute a denial of any "service, program, or activity" within the meaning of the ADA. Memo. Dismiss at 3 (citing *Bryant v. Madigan,* 84 F.3d 246, 247 (7th Cir. 1996)). *Bryant,* submits Jeffreys, is on point and warrants dismissal of the Complaint. Memo. Dismiss at 5.

In *Bryant*, the plaintiff was a paraplegic inmate who sued the prison employees alleging that they violated the ADA when they: (1) failed to install guardrails on his bed, and as a result, he fell out of his bed and broke his leg due to leg spams; and (2) denied him pain medication for his broken leg. 84 F.3d at 247. The Seventh Circuit found that the plaintiff had not alleged that he had been denied access to a prison "service, program, or activity" but rather, that he had received allegedly inadequate medical care. *Id.* at 249. The ADA, observed the court, does not create a remedy for medical malpractice in prison. *Id.* Jeffreys maintains that, pursuant to *Bryant*, Scott's inability to manage his catheter while in bed is a question of medical treatment and

not a denial of access to a "service, program, or activity" under the ADA. Memo. Dismiss at 5.

The Estate, not surprisingly, responds that *Bryant* is distinguishable and therefore, not controlling. Resp. at 9. The Court agrees. In this case, unlike *Bryant*, the Estate does not assert a medical malpractice or inadequate medical treatment claim masquerading as an ADA or Rehabilitation Act claim. *See* 84 F.3d at 249. Rather, the heart of the Complaint is that Defendants denied Scott, a paraplegic inmate, access to a service, program, or activity, when it failed to provide him with access to the ability to "effectively and safely use the restroom." Resp. at 4–5. The Complaint alleges that Scott's placement in a bunk bed prevented him from effectively using his catheter, which caused him to spill urine on himself, and that Stateville refused to assign him to an ADA-compliant cell. Compl. ¶¶ 14, 18. As the Estate correctly points out, sixteen years after *Bryant*, the Seventh Circuit found that while incarceration itself is not a program or activity within the meaning of the ADA, facilities that provide necessities to inmates like meals and showers are "services, programs, or activities" within the meaning of the ADA. Resp. at 5 (citing *Jaros*, 684 F.3d at 672); *see also Price v. Illinois Dep't of Corr.*, 2020 WL 1016558 (N.D. Ill. Apr. 4, 2022); *Simmons*, 2017 WL 3568408. Jeffreys fails to address *Jaros* in his reply and therefore has waived any available response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

The Estate additionally contends the instant case is similar to *Gaston*, another recent in-District case. Resp. at 6 (citing 2016 WL 612858, *5 (N.D. Ill. Feb. 16, 2016)).

7

In *Gaston*, the court denied the defendant-sheriff's motion to dismiss the disabled plaintiff's complaint, finding the plaintiff's allegations that he could not access a jail's "toilets, showers, beds, or common area facilities on the same basis as [non-disabled] detainees" sufficient to plead an ADA claim. 2016 WL 612858 at *5. The Estate asserts that, as in *Gaston*, where the plaintiff's inability to use the jail toilets on the same basis as non-disabled detainees constituted a denial of access, here Scott's inability to hygienically manage his urine constitutes a denial of access to restroom facilities, a "service, program, or activity." Resp. at 7–8 (citing 2016 WL 612858 at *5).

Jeffreys counters that nowhere in its Complaint does the Estate allege Scott was denied access to restroom facilities. Reply at 3. Rather, all the Estate alleges is that Scott was placed in a non-ADA-complaint cell with an overhead bunkbed that prevented him from sitting up to use his catheter properly. *Id.* That Scott urinated on himself, according to Jeffreys, was not due to the denial of restroom facilities. *Id.*

The Court finds the Complaint sufficiently alleges Scott's bottom bunk bed prevented him from effectively managing his catheter, thus denying him the primary function of restroom facilities—hygienic means of urine disposal, which is a "service, program, or activity" afforded to non-disabled inmates. Compl. ¶¶ 14, 18; *see Jaros*, 684 F.3d at 672; *Gaston*, 2016 WL 612858 at *2; *see also Clemons*, 168 F. Supp. 3d at 1064–1072 (granting summary judgment on an ADA claim to a plaintiff-inmate denied access to hygienic means of emptying his colostomy bag, finding that defendant's refusal to put plaintiff in a cell with ADA-compliant toilets restricted his

8

ability to dispose of his waste effectively, which constituted discrimination, violated the ADA, thereby explicitly extending *Jaros* and *Gaston* beyond literal physical access to washroom facilities, like showers and toilets, to the right to access hygienic means of waste disposal). These allegations, taken as true, constitute a denial of the "services, programs, or activities" of Stateville, an IDOC facility and public entity, in violation of the ADA.

### 2. Access to Safe Transfer into Bed

The Complaint additionally alleges Scott's placement on a bottom bunk bed exposed him to danger that non-disabled inmates did not face because the only way he could get into bed was by propelling himself from his wheelchair into his bed, and that Stateville refused to assign him to an ADA-compliant cell. Compl. ¶¶ 14, 18.

Jeffreys argues the Complaint, as it relates to Scott's access to his bed, does not "identify . . . what program, service or benefit he was denied as a result of his disability." Memo. Dismiss at 5.

The Estate, again relying on *Jaros* and *Gaston*, counters that denying disabled inmates access to beds, on the same basis as non-disabled inmates, is a denial of a "service, program, or activity." Resp. at 7–8 (citing *Gaston*, 2016 WL 612858 at *5; *see Jaros*, 684 F.3d at 672).

Jeffreys replies that *Gaston* is distinguishable because Scott was never injured getting into bed, and non-disabled inmates experience similar risks of injury getting into bottom bunks as Scott did when he propelled himself from his wheelchair to his

9

bed. Reply at 4. Therefore, submits Jeffreys, Scott was not denied safe access to his bed because other inmates also dealt with risks inherent to bunk beds. *Id.*

The Court finds, in viewing the allegations of the Complaint in the light most favorable to the Estate, as the Court must, that the Complaint sufficiently alleges Scott was denied access to his bed on the same basis as other inmates, and such access is a "service, program, or activity" within the meaning of the ADA. *See Gaston*, 2016 WL 612858 at *5; Compl. ¶¶ 14, 18. Inmates with the use of their legs, who can step into bed and control their body position to avoid the top bunk, would not be subject to the same risks of injury as Scott propelling himself through the air from his wheelchair into bed. He faced additional risks not experienced by non-disabled inmates. As Scott's access to his bed was not equivalently safe to the access provided to non-disabled inmates, he was denied access to his bed, a Stateville "service, program, or activity," on the same basis as non-disabled inmates. *See Gaston*, 2016 WL 612858 at *5; Compl. ¶ 14. These allegations, taken as true, constitute a denial of the "services, programs, or activities" of a public entity in violation of the ADA.

The Court finds that the Estate's allegations suffice at this juncture to plausibly allege a failure to accommodate under the ADA.

### B. Discrimination Because of Disability

Next, Jeffreys argues the Complaint should be dismissed as it does not allege "how [Scott] was discriminated against because of his disability." Memo. Dismiss at 4. Jeffreys maintains that the Complaint must allege Scott was denied access to a "service, program, or activity" because of his disability. Memo. Dismiss at 6 (citing

10

*Miller v. Kozel*, 2010 WL 5060267, *5 (N.D. Ill. Dec. 6, 2010)). *Miller*, according to Jeffreys, is on point and warrants dismissal of the Complaint. Memo. Dismiss at 6.

In *Miller*, the plaintiff, the mother of a juvenile detainee with a history of mental illness who committed suicide while in the custody of the detention center, filed suit against the detention center, alleging the detention center violated the ADA and the Rehabilitation Act by placing her son in a room with a sturdy framed bunk bed and, as a result, her son ended his life by hanging himself from the top bunk. 2010 WL 5060267 at *1. The court dismissed the ADA and Rehabilitation Act counts, finding that the plaintiff did not sufficiently allege her son was denied anything because of his disability. *Id.* at *5. The court noted that plaintiff failed to allege that other inmates were given a different bed or that her son was denied a different bed because of his mental illness. *Id.*

Jeffreys argues that Scott, like the plaintiff in *Miller*, was not denied access to a non-bunk bed *because* of his disability, so neither the plaintiff in *Miller* nor Scott were discriminated against in violation of the ADA. Memo. Dismiss at 6 (citing 2010 WL 5060267 at *5).

In response, the Estate contends that *Miller* is distinguishable. Resp. at 10. As an initial matter, the Court notes that *Miller* is not a Seventh Circuit case and therefore, can only serve as persuasive authority that is not binding on the Court. 2010 WL 5060267. Moreover, the Court agrees with the Estate that *Miller* is distinguishable. In *Miller*, the complaint failed to identify the "service, program, or activity" the juvenile detainee had allegedly been denied because of his disability. *See*

11

2010 WL 5060267 at *5. Here, by contrast, the Complaint alleges that Scott, unlike other non-disabled inmates, was placed in a cell that did not provide him safe access to his bed or access to hygienic means of waste disposal due to his disability. Compl. ¶¶ 14, 17. At this pleading stage, the Court takes the Estate's allegations as true that Scott was refused accommodation for his disability and as a result was unable to get out of bed or use the toilet on a basis equal to that of non-disabled inmates. *See Jaros*, 684 F.3d at 672; Compl. ¶¶ 12, 14, 18. In short, the Complaint plausibly alleges that Scott was discriminated against *because* of his disability. Therefore, the motion to dismiss the ADA and Rehabilitation Act claims are denied.

## II. Punitive Damages

In the Complaint, the Estate seeks punitive damages against Jeffreys. Compl. ¶¶ 38(b); 50(b). Jeffreys correctly asserts—and the Estate does not dispute in its response (and therefore has waived any argument to the contrary, *see Bonte*, 624 F.3d at 466)—that punitive damages are not available in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act. Memo. Dismiss at 3 (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)). Accordingly, the Court dismisses the Estate's request for punitive damages.

## Conclusion

For these reasons, Jeffreys' Motion to Dismiss [17] is granted in part and denied in part. It is granted solely as to the Estate's request for punitive damages

and denied in all other respects.

The requests for punitive damages (R. [1], ¶¶ 38(b); 50(b)) in the Complaint are stricken. Jeffreys is directed to answer the Complaint by 7/27/2022.

_____
Franklin U. Valderrama
United States District Judge

Dated: July 13, 2022